**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| **ROYCE GARNER and GLADYS GARNER,** | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | |
| **vs.** | ) | ___________________ |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **First Defendant,** | ) | |
| | ) | |
| **THE BOARD OF REGENTS OF THE** | ) | |
| **UNIVERSITY SYSTEM OF GEORGIA** | ) | |
| **(specifically Augusta University Medical** | ) | |
| **Center, formerly Georgia Regents** | ) | |
| **University, a department/agency of the** | ) | |
| **State of Georgia),** | ) | |
| **Second Defendant,** | ) | |
| | ) | |
| **MCG HEALTH, INC.,** | ) | |
| **Third Defendant, and** | ) | |
| | ) | |
| **ERIC ZEVALLOS, M.D.,** | ) | |
| **Fourth Defendant** | ) | |
| ____ | ) | |

## COMPLAINT

**COME NOW** ROYCE GARNER and GLADYS GARNER, Plaintiffs, and bring this Complaint against the above-named Defendants, showing the Court the following:

## I. PROCEDURAL FACTS

1. Plaintiffs are residents of Richmond County, Georgia, and submit themselves to the jurisdiction of this Court.
2. Defendant United States of America, through the Department of Veterans Affairs, operates a health care facility known as the Charlie Norwood VA Medical

Center ("CNVAMC"), located in Augusta, GA. Defendant, in operating the hospital, holds itself out to veterans, the dependants of veterans and others to use that degree of care, skill, diligence, and attention used by hospitals generally in the community in their care and treatment of patients. This hospital, operated by the Defendant, has in its employ, among others, physicians, nurses, interns, residents, student nurses, nurses' aides, social workers, and other personnel over which it exercises exclusive control and supervision, and possesses the right to employ and discharge such employees. Pursuant to Rule 4(i)(1) of the Federal Rules of Civil Procedure, copies of Plaintiffs' Summons and Complaint shall be served via certified mail upon the **Attorney General**, Mr. Jeff Sessions, at the Department of Justice, Room 5111, 10th Street & Constitutional Avenue, NW, Washington, DC 20530, and upon the **U.S. Attorney for the Southern District of Georgia**, Mr. James D. Durham, at 600 James Brown Blvd, Suite 200, Augusta, Georgia 30901.

3. Defendant Board of Regents of the University System of Georgia (hereinafter “Board of Regents”), specifically Augusta University Medical Center ("AUMC"), is subject to the jurisdiction of this Court by reason of the Georgia Tort Claims Act (O.C.G.A. §50-21-20 et seq). Pursuant to O.C.G.A. §50-21-35, it may be served with process by way of (a) its Chancellor, Hank M. Huckaby, the Chief Executive Officer of the Board of Regents, at 270 Washington Street S.W., Suite 7096, Atlanta, GA 30334 and (b) the Director of the Risk Management Division of the Department of Administrative Services of the State of Georgia, at Suite 1504, West Tower, 200 Piedmont Avenue, Atlanta, GA 30334.

4. The Honorable Christopher M. Carr, Attorney General of the State of Georgia, has been served, pursuant to O.C.G.A. §50-21-35, with a copy of this Action via certified mail at 40 Capitol Square, S.W., Suite 132, Atlanta, GA 30334, and Plaintiff has filed contemporaneously with this Complaint and affixed as **Exhibit "A"**—pursuant to Section 50-21-35 of the Georgia Code—an affidavit executed by the undersigned counsel for Plaintiff certifying that a copy of this Complaint has been mailed this date, by certified mail, return receipt requested, to the Attorney General at his usual office, which is situated at the foregoing address.
5. Filed contemporaneously herewith and affixed hereto as **Exhibit "B"** is a true and correct copy of the Notice of Claim and delivery receipt pertaining thereto that was presented to the Risk Management Division of the Department of Administrative Services within twelve (12) months of the occurrence which is the subject matter of this case in accordance with O.C.G.A. §50-21-26.
6. Defendant MCG Health, Inc. is a domestic corporation authorized to conduct business in the State of Georgia, and may be served with process by way of its registered agent, E.L. Speese, at 1120 15th Street, BA-8255, Augusta, Richmond County, GA 30912.
7. Defendant Eric Zevallos, M.D. resides at 16 Whitney Court, Augusta, GA 30904, and may be served with process at that address.
8. This is an action brought pursuant to the Federal Tort Claims Act, and thus this Court has jurisdiction over this action pursuant to 28 U.S.C. §1346(b) as well as jurisdiction over any relevant Georgia state law claims pursuant to 28 U.S.C. §1367. Jurisdiction and venue are also proper in this Court pursuant to Section

50-21-28 of the Georgia Code, as the loss giving rise to Plaintiff's Complaint occurred in Richmond County, GA, and at least one party Defendant is an officer or employee of the State of Georgia.

9. Plaintiffs have satisfied the jurisdictional prerequisite of 28 U.S.C. §2675(a) by the timely filing of administrated claims against the United States of America, by and through the Department of Veterans Affairs. The parties have been unable to resolve the aforesaid claims through settlement, as the United States of America has administratively denied Plaintiffs' claims, and as the six (6) month time period for settlement of this matter has expired, the filing of this Complaint is timely pursuant to the Federal Tort Claims Act.

## II. FACTS

10. Plaintiff Royce Garner is a 64-year old African American male who served in the U.S. Army from 1971 to 1986; he received a medical discharge after being diagnosed with Type II Diabetes, for which he takes insulin.

11. Approximately two years ago, Plaintiff was placed on coumadin as a precaution against clotting due to a previous vascular event. At some point, his physicians at CNVAMC took him off of the coumadin, stating merely that he no longer needed it, although, on information and belief, no imaging scans were taken to determine whether he was completely free of any clot risks.

12. On the morning of April 1, 2016, Plaintiff's family called an ambulance, which rushed him to Charlie Norwood VA Medical Center due to reports of overall body aches and pains as well as observed disorientation due to an unusually high blood sugar level. He arrived at CNVAMC around 9:39 a.m.

13. Plaintiff was initially examined by--and his vitals and medical notes were initially reviewed and drafted by--Eric Zevallos, M.D. (emergency medicine), Fernando Segarra-Cordero, RN, Charles A. McCoy, M.D. (internal medicine), and Alvan Cabrera-Castillo, RN.

14. Defendant Zevallos, on information and belief, was a contract physician who was principally employed with the Board of Regents (by way of AUMC) on the date in question.

15. Although Plaintiff's family members advised his physicians and nurses that his left leg was cold to the touch, the aforesaid physicians and nurses did not make a note of the leg coldness or the loss of pulse in Mr. Garner's left popliteal and dorsali pedis arteries; in fact, neither Defendant Zevallos nor any of CNVAMC's physicians or staff noticed these irregularities until the very next day.

16. On April 2, 2016, around 11:22 a.m., resident physician Haytham Alkhaimy, M.D. and pulmonary attending physician Joseph P. John, M.D. ordered a venous/arterial Doppler scan of Plaintiff's left leg, and consulted a vascular surgeon to assess his symptoms; Plaintiff's physicians were able to obtain femoral pulses, but no dorsalis pedis signal.

17. Plaintiff was ultimately diagnosed as suffering from LLE critical limb ischemia due to clotting in the left femoral artery. An LLE thrombectomy accompanied by a prophylactic 4 compartment fasciotomy was performed on April 2, 2016 to remove the clot, but, unfortunately, by that time, the limb had become non-viable.

18. A below-knee guillotine amputation was performed on Plaintiff's left leg on April 3, 2016.

19. Plaintiff has become permanently and catastrophically disabled, as he has suffered the permanent loss of a limb, and he will have to contend with ongoing physical, mental, and emotional trauma resulting therefrom for the foreseeable future.

## III. <u>ENUMERATION OF CLAIMS</u>

### *A. <u>COUNT I: PROFESSIONAL NEGLIGENCE</u>*

20. Plaintiffs incorporate, as if realleged herein, Paragraphs 1 through 19 of their Complaint.

21. Under the provisions of the Federal Tort Claims Act, Plaintiffs' claim for medical malpractice is governed by the substantive law of the State of Georgia.

22. Defendants owed Royce Garner the duty to exercise that degree of skill, care, caution, diligence and foresight exercised by and expected of other surgeons, surgical staff employees, and healthcare facilities under the same or similar circumstances.

23. A review of Plaintiff's medical records for April 1, 2016 show that while his health care providers documented, in part, his physical presentation (e.g. skin dryness), they did not indicate that a Doppler pulse exam or a venous exam were performed prior to April 2, 2016. There is also no documentation commemorating any discussions Dr. Zevallos or the CNVAMC physicians or staff may have had with Plaintiff's family members.

24. Plaintiff's prior history of clotting and use of prescribed anticoagulants, coupled with the two weeks of leg pain he had experienced leading up to April 1, 2016, should have alerted Defendants of at least the possibility that he was experiencing a vascular/pulmonary emergency.

25. Plaintiff presented with diabetic keto-acidosis (DKA), which means that there were high levels of acid and sugar in his blood. This condition is caused by acute stressors, such as infection, vascular abnormalities, trauma, and reactions to certain medications. While Dr. Zevallos and CNVAMC's physicians and staff may have properly treated Mr. Garner's DKA by administering fluids and insulin, the underlying cause of the DKA (in this case, Plaintiff's circulatory insufficiency) was never explored. A detailed consult with Plaintiff's family and a review of his history would have apprised Defendants of his past vascular problems, and in turn would have likely lead them to discover that his DKA had been triggered by clotting in his lower extremities.

26. Defendants should have physically and visually inspected Plaintiff's left leg, checking for equal and symmetric dorsalis pedis and posterior tibialis pulses shortly after his arrival on April 1, 2016, and if they were unable to detect such pulses, they should have performed ultrasound scans; at least one of the aforesaid tests would have in all likelihood alerted Defendants that Plaintiff was contending with weak circulatory profusion.

27. Had Dr. Zevallos, Nurse Segarra-Cordero, Dr. McCoy, or Nurse Cabrera-Castillo performed or directed another caregiver to perform a visual and tactile inspection of Plaintiff's left leg, dorsalis pedis and posterior tibialis examinations, or ultrasound scans on April 1, 2016, it is highly likely that the left leg clots would have been detected and removed before ischemia developed to the point to where a substantial amount of tissue became non-viable.

28. But for Dr. Zevallos's and CNVAMC's physicians' and staffmembers' 24-hour delay in detecting and removing the clots in Plaintiff's left leg, there was a high

likelihood that viability of the leg could have been preserved, and, at the very least, the amount of tissue loss could have been drastically reduced or blood flow could have been restored to the point where amputation would not have been necessary.

29. By failing to perform, order, or suggest the performance of the aforesaid examinations, the examining, prescribing and treating physicians, nurses, and staff employed by or having privileges at CNVAMC--including, but not limited to, Eric Zevallos, M.D., Fernando Segarra-Cordero, RN, Charles A. McCoy, M.D., and Alvan Cabrera-Castillo, RN—deviated from the standard of care.

30. For or all the foregoing reasons, Defendants engaged in actionable negligence and medical malpractice.

31. Pursuant to Section 9-11-9.1 of the Georgia Code, the affidavit of an expert medical witness has been attached hereto as **Exhibit "C,"** with said expert being competent to testify in this matter, and with such Affidavit setting forth specifically at least one of the negligent acts and omissions which form the basis of Plaintiffs' Complaint against the Defendants, and setting forth the factual basis for such claims as set forth in this Complaint.

### *B. COUNT II: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS*

32. Plaintiffs incorporate, as if realleged herein, Paragraphs 1 through 31 of their Complaint.

33. By failing to properly or adequately follow procedures for detecting and removing DVTs and other vascular hazards, despite knowing the extremely high probability of a serious or catastrophic event occurring as a result of their failure to act, Defendants engaged in extreme and outrageous conduct.

34. As a result of Defendants' actions, Plaintiff Royce Garner suffered severe emotional distress in addition to sustaining catastrophic physical injuries.

35. For all the foregoing reasons, Defendants' actions constituted actionable negligent infliction of emotional distress.

### ***C. COUNT III: RESPONDEAT SUPERIOR***

36. Plaintiffs incorporate as if realleged herein Paragraphs 1 through 35 of their Complaint.

37. At all times relevant to this Action, Fernando Segarra-Cordero, RN, Charles A. McCoy, M.D., and Alvan Cabrera-Castillo, RN were acting within the scope of their employment at CNVAMC, while Defendant Eric Zevallos M.D. was acting either within the scope of his employment with AUMC or with CNVAMC.

38. The injuries complained of herein took place on premises controlled, owned and operated by Defendant United States of America.

39. At all times relevant to this Action, CNVAMC and AUMC held themselves out as entities staffed by medical personnel competent to treat individuals such as the Plaintiff.

40. For all the foregoing reasons, the United States of America, through the actions of CNVAMC personnel, and AUMC, are vicariously liable for the acts and omissions of their agents, servants and employees in the care provided to Plaintiff—with such acts and omissions being duly alleged in the foregoing paragraphs—under the vicarious liability theory of *respondeat superior* and pursuant to agency principles.

### *D. COUNT IV: LOSS OF CONSORTIUM*

41. Plaintiffs incorporate as if realleged herein Paragraphs 1 through 40 of their Complaint.

42. At all times relevant to this Action, it was well established that the spouse of an injured party may seek a recovery for the loss of consortium, and that consortium is defined as "the marital rights and duties of the spouses *inter se*, the reciprocal rights and duties of society, companionship, love, affection, aid, services, cooperation...and comfort, such being special rights and duties growing out of the marriage." *Lee v. Thomason*, 277 Ga. App. 573, 576, 627 S.E. 2d 168 (2006).

43. At the time of the subject incident, Plaintiffs were lawfully married, and are currently married.

44. Plaintiff Gladys Garner has suffered a loss of Plaintiff Royce Garner's society, companionship, love, affection, aid, and services as a direct and proximate result of the subject accident.

45. For all the foregoing reasons, Plaintiff Gladys Garner is entitled to recover loss of consortium damages.

**WHEREFORE**, Plaintiff prays for the following relief:

a. Damages in the amount of **Eighteen Million and 00/100 Dollars ($18,000,000.00)** on behalf of Royce Garner;

b. Damages in the amount of **Two Million and 00/100 Dollars ($2,000,000.00)** on behalf of Gladys Garner;

c. Special damages to be determined by the time of trial;

d. Reasonable costs and attorney's fees; and

e. Such other relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED,**

This 24th day of July, 2017.

/s/Edwin A. Wilson___________
**Randolph Frails**
Georgia Bar No.: 272729
**Edwin A. Wilson**
Georgia Bar No.: 143087
*Attorneys for Plaintiff*

**FRAILS & WILSON, LLC**
211 Pleasant Home Rd., Ste. A-1
Augusta, Georgia 30907
Telephone: 706.855.6715
Facsimile: 706.855.7631
RandyFrails@frailswilsonlaw.com
EdwinWilson@frailswilsonlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| **ROYCE GARNER and GLADYS GARNER,**<br>**Plaintiffs,**<br><br>**vs.**<br><br>**UNITED STATES OF AMERICA,**<br>**First Defendant,**<br><br>**THE BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA (specifically Augusta University Medical Center, formerly Georgia Regents University, a department/agency of the State of Georgia),**<br>**Second Defendant,**<br><br>**MCG HEALTH, INC.,**<br>**Third Defendant, and**<br><br>**ERIC ZEVALLOS, M.D.,**<br>**Fourth Defendant** | ) | **CIVIL ACTION FILE NO.:**<br><br>________________________ |

**VERIFICATION**

PERSONALLY APPEARED before the undersigned, an officer authorized by law to administer oaths, **ROYCE GARNER** and **GLADYS GARNER**, who, after being duly sworn, depose and state that the contents of the within and foregoing Complaint are true and correct to the best of their knowledge and belief.

________________________
Royce Garner

________________________
Gladys Garner

SWORN TO AND SUBSCRIBED
before me this 24 day of
July, 2017.

Grethel Natali Garvin
NOTARY PUBLIC FOR STATE OF GEORGIA

GRETHEL NATALI GARVIN
MY COMMISSION EXPIRES
JULY 14, 2019
RICHMOND CO., GEORGIA
NOTARY PUBLIC

# EXHIBIT "A"

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

**ROYCE GARNER and GLADYS GARNER,)**
**Plaintiffs, )**
**)**
**vs. )**
**)**
**UNITED STATES OF AMERICA, )**
**First Defendant, )**
**)**
**THE BOARD OF REGENTS OF THE )**
**UNIVERSITY SYSTEM OF GEORGIA )**
**(specifically Augusta University Medical )**
**Center, formerly Georgia Regents )**
**University, a department/agency of the )**
**State of Georgia), )**
**Second Defendant, )**
**)**
**MCG HEALTH, INC., )**
**Third Defendant, and )**
**)**
**ERIC ZEVALLOS, M.D., )**
**Fourth Defendant )**
**____________________________________)**

**CIVIL ACTION FILE NO.:**

**______________________**

**AFFIDAVIT OF EDWIN A. WILSON**

PERSONALLY APPEARED before the undersigned attesting officer authorized by law to administer oaths the deponent signatory hereto, who, after being duly sworn, on oath says and deposes as follows:

1. That I am EDWIN A. WILSON, a member of the State Bar of Georgia and counsel for the plaintiff in the above-captioned case.

2. That I have this date sent a copy of the Complaint by Certified Mail, to the Attorney General of the State of Georgia, the Honorable Sam Olens, at his usual office address, at **40 Capital Square, S.W., Atlanta, GA 30334.**

3. Furthermore, Affiant sayeth not.

[signature]
EDWIN A. WILSON

Sworn to and signed before me

This 24th day of July, 2017.

[signature]

NOTARY PUBLIC, ____________ COUNTY

My commission expires:

MICHELLE L MAURER
MY COMMISSION EXPIRES
JULY 13 2019
RICHMOND CO., GEORGIA
NOTARY PUBLIC

# EXHIBIT "B"

# FRAILS & WILSON LLC

ATTORNEYS AT LAW

RANDOLPH FRAILS, GA & SC
RANDYFRAILS@FRAILSWILSONLAW.COM
TAMEKA HAYNES GA & MD
THAYNES @FRAILSWILSONLAW.COM

EDWIN A. WILSON, GA
EDWINWILSON@FRAILSWILSONLAW.COM
KELLI SPENCER, GA
KELLISPENCER@FRAILSWILSONLAW.COM


March 9, 2017

***CERTIFIED MAIL—RETURN RECEIPT REQUESTED***
***NUMBER: 7013 2250 0001 0536 8586***

Risk Management Division
Department of Administrative Services, State of Georgia
Suite 1504, West Tower
200 Piedmont Avenue SE
Atlanta, GA 30334

**ANTE LITEM NOTICE**

**RE: State Tort Claim Act**
**Claimant: Royce Garner**
**Date of Loss: April 1, 2016**

To Whom it May Concern,

Please be advised that this letter is written pursuant to O.C.G.A. §50-21-26 and constitutes a notice of claim against the State. The State entity involved in this matter is the Board of Regents of the University System of Georgia, specifically Augusta University Medical Center, formerly known as Georgia Regents University Hospital, formerly known as the Medical College of Georgia. We are writing this letter on behalf of Mr. Royce Garner and his wife, Ms. Gladys Garner, as a result of a possible medical malpractice claim.

Mr. Garner is a 64-year old gentleman who served in the U.S. Army from 1971 to 1986. He received a medical discharge after being diagnosed with Type II Diabetes, for which he takes insulin. Approximately two years ago, Mr. Garner was placed on blood thinners as a precaution against clotting due to a vascular incident that occurred several years earlier.

On the morning of April 1, 2016, Mr. Garner's family called an ambulance, which rushed him to Charlie Norwood VA Medical Center (CNVAMC) due to reports of overall body aches and pains as well as observed disorientation due to an unusually high blood sugar level. Although Mr. Garner's family members advised his physicians that his left leg was cold to the touch, the aforesaid physicians did not make a note of the leg coldness or the loss of pulse in the left popliteal and dorsali pedis arteries until the very next day. **Dr. Eric Zevallos**, who was employed by **Augusta University Medical**

**Center** at the time of this incident, initially examined, ordered tests on the behalf of, and/or reviewed the history and chart of Mr. Garner at the time of his April 1, 2016 admission.

On April 2, resident physician Haytham Alkhaimy, M.D. and pulmonary attending physician Joseph P. John, M.D. ordered a venous/arterial Doppler scan of Mr. Garner's left leg, and consulted a vascular surgeon to assess his symptoms. Mr. Garner's physicians were able to obtain femoral pulses, but no DP signal. He was ultimately diagnosed as suffering from LLE critical limb ischemia due to clotting in the left femoral artery. An LLE thrombectomy accompanied by a prophylactic 4 compartment fasciotomy was performed on April 2, 2016 to remove the clot, but, unfortunately, by that time, the limb had become non-viable. A below-knee guillotine amputation was performed on Mr. Garner's left leg on April 3, 2016. As of today's date, Mr. Garner is still recuperating from his surgery.

Mr. Garner's injuries will be permanently debilitating, as he has suffered the permanent loss of a limb, and he will likely have to contend with ongoing physical, mental, and emotional trauma for the foreseeable future. At present, his loss is in the amount of **Eighteen Million and 00/100 Dollars ($18,000,000.00)**. His wife, Gladys Garner, has sustained loss of consortium damages and emotional distress damages in the amount of **Two Million and 00/100 Dollars ($2,000,000.00)**.

Mr. Garner's loss was caused at least in part by the acts and omissions of Dr. Eric Zevallos, and by extension Augusta University Medical Center under the doctrine of *respondeat superior*. We firmly believe that had Mr. Garner's physicians and nurses performed or directed another caregiver to perform a visual and tactile inspection of his left leg, dorsalis pedis and posterior tibialis examinations, or ultrasound scans on April 1, 2016, it is highly likely that the clots in his left leg would have been detected and removed before ischemia developed to the point to where a substantial amount of tissue became non-viable. By failing to perform, order, or suggest the performance of the aforesaid examinations, the examining, prescribing and treating physicians, nurses, and staff employed by or having privileges at CNVAMC and Augusta University Medical Center--including, but not limited to, Eric Zevallos, M.D.—deviated from the standard of care.

This letter shall act as a "Notice of Claim" pursuant to O.C.G.A. §50-21-26, and is therefore sent by certified mail.

Very truly yours,

Edwin A. Wilson

Cc: Christopher M. Carr, Esq.
Office of the Attorney General
Department of Law, State Judicial Building
40 Capital Square SW
Room 132
Atlanta, GA 30334-1300
***CERTIFIED MAIL—RETURN RECEIPT REQUESTED***
***NUMBER: 7013 2250 0001 0536 8623***

Chancellor Steve Wrigley
The Board of Regents of the University System of Georgia
270 Washington Street SW
Atlanta, GA 30334
***CERTIFIED MAIL—RETURN RECEIPT REQUESTED***
***NUMBER: 7013 2250 0001 0536 8616***

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Christopher M. Carr, Esq.
Office of the Attorney General
Dept. of Law, State Judic. Bldg.
40 Capitol Square SW.
Room 132
Atlanta, GA 30334-1300

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

RECEIVED

B. Received by (Printed Name) C. Date of Delivery

MAR 14 2017

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

DEPARTMENT OF LAW

3. Service Type
☐ Certified Mail® ☐ Priority Mail Express™
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7013 2250 0001 0536 8623

PS Form 3811, July 2013 Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

7013 2250 0001 0536 8623

| | |
|---|---|
| Postage | $ .46 |
| Certified Fee | 6.00 |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.46 |

Postmark Here
3/9/17

Sent To Christopher M. Carr, Esq.
Street, Apt. No.; or PO Box No. Atty Gen. office
City, State, ZIP+4

PS Form 3800, August 2006 See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Risk Mgmt. Division
Dept. of Administrative Svcs
State of Georgia
Suite 1504, West Tower
200 Piedmont Ave SE
Atlanta, GA 30334

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (*Printed Name*)

C. Date of Delivery 3/14/17

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail® ☐ Priority Mail Express™
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ Collect on Delivery

4. Restricted Delivery? (*Extra Fee*) ☐ Yes

2. Article Number
(*Transfer from service label*) 7013 2250 0001 0536 8586

PS Form 3811, July 2013 Domestic Return Receipt

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
***(Domestic Mail Only; No Insurance Coverage Provided)***

For delivery information visit our website at www.usps.com®

OFFICIAL USE

7013 2250 0001 0536 8586

| | |
|---|---|
| Postage | $ .46 |
| Certified Fee | 6.00 |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.46 |

Postmark Here
3/9/17

*Sent To* Risk Mgmt Div.
*Street, Apt. No.; or PO Box No.* Dept. of Adm. Svcs
*City, State, ZIP+4*

PS Form 3800, August 2006 See Reverse for Instructions

**70132250000105368616**

70132250000105368616

**Delivered:**

ATLANTA, GA 30334 on March 13, 2017 at 12:45 pm

7013 2250 0001 0536 8616

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ .46 |
| Certified Fee | 6.00 |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.46 |

Postmark Here

3/9/17

Sent To Chancellor Steve Wrigley

Street, Apt. No.; or PO Box No. Board of Regents

City, State, ZIP+4

PS Form 3800, August 2006 See Reverse for Instructions

# EXHIBIT "C"

**STATE OF MARYLAND )**
**)AFFIDAVIT OF BRIAN THOMAS GARIBALDI, M.D.**
**COUNTY OF BALTIMORE CITY )**

PERSONALLY appeared before the undersigned officer duly authorized to administer oaths in this State, **Brian Thomas Garibaldi, M.D.**, who, being duly sworn, deposes and states as follows:

1. My name is Brian Thomas Garibaldi, M.D.; I am of legal age, and am competent to testify.
2. A true and correct copy of my Curriculum Vitae is attached hereto and marked as Exhibit "A," and is incorporated specifically herein.
3. The facts stated herein are based upon my own personal knowledge.
4. I am currently a licensed physician in the State of Maryland, and, from 2013 to the present, have been duly licensed in the State of Maryland as a professor of medicine at the Johns Hopkins University School of Medicine.
5. I am board certified in Pulmonary and Critical Care Medicine, and was thus certified to conduct (and in fact conducted) diagnoses and treatments in that capacity for at least three of the five years preceding the events giving rise to Mr. Royce Garner's Complaint.
6. I am board certified in Pulmonary and Critical Care Medicine, and was thus certified to provide instruction (and in fact provided instruction) regarding diagnoses and treatments in that capacity for at least three of the five years preceding the events giving rise to Mr. Royce Garner's claims.
7. During my medical career, including during this period, my practice has included a variety of medical activities as defined by Official Code of Georgia Annotated §43-

34-20(3), including the following: holding myself out to the public as being "engaged in the diagnosis or treatment of disease, defects, or injuries of human beings: suggesting, recommending, or prescribing forms of treatment "for the intended palliation, relief, or cure of any physical, mental, or functional ailment or defect of any person with the intention of receiving therefore, either directly or indirectly, any fee, gift or compensation whatsoever"; "the maintenance of an office for the reception, examination, and treatment of persons suffering from disease, defect, or injury of body or mind"; and attaching the title "M.D." either alone or in connection with other words, or any other words or abbreviations to my name indicating that I am engaged in the treatment or diagnosis of disease, defects, or injuries to human beings.

8. As a pulmonary and critical care medicine physician, I have actual knowledge and experience in the area of providing medical care for individuals presenting with a wide variety of illnesses, complications, and injuries, including illnesses, complications, and injuries involving the vascular system. In particular, my practice of medicine included performing the functions and procedures, and rendering the medical care, which I have noted to be deficient below. Specifically, my practice from 2013 to the present included evaluating and assessing the condition of patients such as Royce Garner, and providing medical care to patients with conditions similar to those presented by Mr. Garner.

9. During at least three of the last five years, and during at least three of the last five years preceding Mr. Garner's admittance to Charlie Norwood VA Medical Center (CNVAMC) on April 1, 2016, I have been actively instructing and teaching in

curricula pertaining to pulmonary and critical care examinations, diagnoses, and procedures.

10. During at least three of the last five years, and during at least three of the last five years preceding Mr. Garner's admittance to CNVAMC on April 1, 2016, I have been familiar with the symptoms of and treatment for venous and arterial insufficiencies, as well as the diagnostic tests required to properly diagnose and identify these complications.
11. During at least three of the last five years preceding Mr. Garner's admittance to CNVAMC on April 1, 2016, I have frequently supervised, trained, and directed others—including hospital physicians, nurses, agents and staff—in performing examinations to detect blood flow dysfunctions by, among other things, performing Doppler probes and arterial duplex scans on patients presenting with symptoms similar to those exhibited by Royce Garner on April 1, 2016 for the purpose of detecting vascular insufficiency and occlusion. I have also frequently interpreted the results of such examinations.
12. I have reviewed the medical records of Royce Garner from CNVAMC in Augusta, Georgia, and am aware of the following course of events.
13. Mr. Garner is a 64-year old African America gentleman who served in the U.S. Army from 1971 to 1986. He received a medical discharge after being diagnosed with Type II Diabetes, for which he takes insulin.
14. On the morning of April 1, 2016, Mr. Garner's family called an ambulance, which rushed him to Charlie Norwood VA Medical Center due to reports of overall body aches and pains as well as observed disorientation due to an unusually high blood sugar level. He arrived at CNVAMC around 9:39 a.m.

15. Mr. Garner was initially examined by--and his vitals and medical notes were initially reviewed and drafted by--Eric Zevallos, M.D. (emergency medicine), Fernando Segarra-Cordero, RN, Charles A. McCoy, M.D. (internal medicine), and Alvan Cabrera-Castillo, RN.

16. Although Mr. Garner's family members advised his physicians and nurses that his left leg was cold to the touch, the aforesaid physicians and nurses did not make a note of the leg coldness or the loss of pulse in Mr. Garner's left popliteal and dorsalis pedis arteries. Indeed, none of CNVAMC's physicians or staff noticed these irregularities until the very next day.

17. On April 2, 2016, around 11:22 a.m., resident physician Haytham Alkhaimy, M.D. and pulmonary attending physician Joseph P. John, M.D. ordered a venous/arterial Doppler scan of Mr. Garner's left leg, and consulted a vascular surgeon to assess his symptoms. Mr. Garner's physicians were able to obtain femoral pulses, but no dorsalis pedis signal.

18. Mr. Garner was ultimately diagnosed as suffering from LLE critical limb ischemia due to clotting in the left femoral artery. An LLE thrombectomy accompanied by a prophylactic 4 compartment fasciotomy was performed on April 2, 2016 to remove the clot, but, unfortunately, by that time, the limb had become non-viable.

19. A below-knee guillotine amputation was performed on Mr. Garner's left leg on April 3, 2016.

20. I am familiar with the standard of care and skill exercised by physicians generally and under similar conditions and like surrounding circumstances as those presented by Royce Garner in April 2016.

21. A review of Mr. Garner's medical records for April 1, 2016 show that while the CNVAMC physicians and staff who examined Mr. Garner documented, in part, his physical presentation (e.g. skin dryness), they did not indicate that a Doppler pulse exam or a venous exam were performed prior to April 2, 2016. There is also no documentation commemorating any discussions the CNVAMC physicians or staff may have had with Mr. Garner's family members. Instead, the records merely indicate that, on the day of his admission, Mr. Garner was confused and could not give a history.

22. Mr. Garner's prior history of clotting and use of prescribed anticoagulants, coupled with the two weeks of leg pain he had experienced leading up to April 1, 2016, should have alerted CNVAMC's physicians and medical staff of at least the possibility that he was experiencing a vascular/pulmonary emergency.

23. Mr. Garner presented with diabetic keto-acidosis (DKA), which means that there were high levels of acid and sugar in his blood. This condition is caused by acute stressors, such as infection, vascular abnormalities, trauma, and reactions to certain medications. While CNVAMC's physicians and staff may have properly treated Mr. Garner's DKA by administering fluids and insulin, the underlying cause of the DKA (in this case, Mr. Garner's circulatory insufficiency) was never explored. A detailed consult with Mr. Garner's family and a review of his history would have apprised the CNVAMC physicians and staff of his past vascular problems, and in turn would have likely lead them to discover that his DKA had been triggered by clotting in his lower extremities.

24. CNVAMC's physicians and staff should have physically and visually inspected Mr. Garner's left leg, checking for equal and symmetric dorsalis pedis and posterior

tibialis pulses shortly after his arrival on April 1, 2016. If they were unable to detect such pulses, they should have performed ultrasound scans. One or more of such tests would have alerted them that Mr. Garner was contending with weak circulatory profusion.

25. It is my opinion to a reasonable degree of medical certainty that had Mr. Garner's physicians and nurses performed or directed another caregiver to perform a visual and tactile inspection of his left leg, dorsalis pedis and posterior tibialis examinations, or ultrasound scans on April 1, 2016, it is highly likely that the left leg clots would have been detected and removed before ischemia developed to the point to where a substantial amount of tissue became non-viable.

26. It is my opinion to a reasonable degree of medical certainty that but for the CNVAMC's physicians' and staff-members' 24-hour delay in detecting and removing the clots in Mr. Garner's left leg, there was a high likelihood that viability of the leg could have been preserved, and, at the very least, the amount of tissue loss could have been drastically reduced or blood flow could have been restored to the point where amputation would not have been necessary.

27. It is also my opinion to a reasonable degree of medical certainty that by failing to perform, order, or suggest the performance of the aforesaid examinations, the examining, prescribing and treating physicians, nurses, and staff employed by or having privileges at CNVAMC--including, but not limited to, Eric Zevallos, M.D., Fernando Segarra-Cordero, RN, Charles A. McCoy, M.D., and Alvan Cabrera-Castillo, RN—deviated from the standard of care.

28. Affiant has set forth herein at least one act or omission/deviation from the standard of care as required by O.C.G.A. §9-11-9.1, and reserves the right to amend or supplement his opinions in the future after he have seen additional records, deposition testimony, or other evidence.

FURTHER, AFFIANT SAYETH NOT.

______________________________

**BRIAN THOMAS GARIBALDI, M.D.**

**Sworn to and subscribed before me**

**This** 16th **day of December, 2016.**

______________________________

**Notary Public.**

**My commission expires:**

ASHLEY CRENSHAW
NOTARY PUBLIC
BALTIMORE COUNTY
MARYLAND
MY COMMISSION EXPIRES MARCH 19, 2018

CURRICULUM VITAE FOR ACADEMIC PROMOTION

The Johns Hopkins University School of Medicine

Brian Thomas Garibaldi, MD 1/1/2016

## DEMOGRAPHIC AND PERSONAL INFORMATION

### Current Appointment

Assistant Professor of Medicine
Division of Pulmonary and Critical Care Medicine
Johns Hopkins University School of Medicine
Baltimore, MD

### Education and Training:

**Undergraduate**

1995-1999 BA Harvard College (Anthropology)

**Doctorate**

2000-2004 MD Johns Hopkins University School of Medicine

**Post-doctorate**

2004-2005 Intern in Department of Medicine
Johns Hopkins University School of Medicine
The Johns Hopkins Hospital, Baltimore, MD

2005-2007 Resident in Department of Medicine
Johns Hopkins University School of Medicine
The Johns Hopkins Hospital, Baltimore, MD

2007-2008 Post-Doctoral Fellow
Division of Pulmonary and Critical Care Medicine
Johns Hopkins University School of Medicine
The Johns Hopkins Hospital, Baltimore, MD

2008-2009 Assistant Chief of Service (Chief Resident), The Longcope Firm
Johns Hopkins University School of Medicine
The Johns Hopkins Hospital, Baltimore, MD

2009-2012 Post-Doctoral Fellow
Division of Pulmonary and Critical Care Medicine
Johns Hopkins University School of Medicine
The Johns Hopkins Hospital, Baltimore, MD

2012-2013 Instructor of Medicine
Division of Pulmonary and Critical Care Medicine
Johns Hopkins University School of Medicine
The Johns Hopkins Hospital, Baltimore, MD

2013-2014 Assistant Professor of Medicine
Perdana University Graduate School of Medicine
Selangor, Malaysia

2013-present Assistant Professor of Medicine
Division of Pulmonary and Critical Care Medicine
Johns Hopkins University School of Medicine
The Johns Hopkins Hospital, Baltimore, MD

2014-present Degree Candidate, Master of Education in the Health Professions
Johns Hopkins University School of Education
Baltimore, MD

## RESEARCH ACTIVITIES

### Publications

### Peer-reviewed Original Science Research

1. Weiss DJ, **Garibaldi BT**, Hauser MD. The production and perception of long calls by cotton-top tamarins (Saguinus oedipus): acoustic analyses and playback experiments. J Comp Psychol. 2001 Sep;115(3):258-71. PMID: 11594495
2. **Garibaldi B**, Conde-Martel A, O'Toole TP. Self-reported comorbidities, perceived needs, and sources for usual care for older and younger homeless adults. J Gen Intern Med. 2005 Aug;20(8):726-30. PMID: 16050882
3. **Garibaldi B**, Malani R, Yeh HC, Lipson E, Michell D, Bennett M, Moliterno A, McDevitt MA, Kickler TS. Estimating platelet production in patients with HIV-related thrombocytopenia using the immature platelet fraction. Am J Hematol. 2009 Oct 9. PMID: 19890906
4. Files DC, D'Alessio F, Johnston LF, Kesari P, Aggarwal N, **Garibaldi B**, Mock JR, Simmers JL, DeGorordo A, Murdoch J, Willis M, Patterson C, Tanskersley C, Mess L, Liu C, Delbono O, Furlow JD, Bodine S, Cohm R, King LS, Crow MT. A Critical Role for Muscle Ring Finger-1 in Acute Lung Injury Associated Skeletal Muscle Wasting. Am J Resp Crit Care Med. 2012 Apr 15;185(8):825-34. PMID: 22312013
5. D'Alessio FR, Tsushima K, Aggarwal NA, Files DC, **Garibaldi BT**, Mock JR, Eto Y, Avalos CR, Rodriguez JV, Reddy SP, Pearse DB, Sidhaye VK, Hassoun PM, Crow MT, King LS. Resolution of experimental lung injury by Monocyte-derived inducible nitric oxide synthase (iNOS). Journal of Immunology. 2012 Sep 1;189(5):2234-45. PMID: 228441172
6. **Garibaldi BT**, D'Alessio FR, Mock JR, Files DC, Chau E, Eto Y, Drummond MB, Aggarwal NA, Sidhaye VK, King LS. Regulatory Tcells Reduce Acute Lung Injury Fibroproliferation By Decreasing Fibrocyte Recruitment. Am J Respir Cell Mol Biol. 2013 Jan;48(1):35-43. PMID: 23002097
7. Aggarwal NR, D'Alessio FR, Eto Y, Chau E, Avalos CR, Waickman AT, **Garibaldi BT**, Mock JR, Files DC, Sidhaye VK, Polotsky VY, Powell J, Horton M, King LS. Macrophage adenosine receptor 2a (A2aR) protects against oxygen-induced augmentation of experimental lung injury. Am J Respir Cell Mol Biol. 2013 May;48(5):635-46. PMID: 23349051
8. Aggarwal NR, Chau E, **Garibaldi BT**, Mock JR, Sussan T, Rao K, Rao K, Menon AG, D'Alessio FR, Damarla M, Biswal S, King LS, Sidhaye VK. .Aquaporin 5 regulates cigarette smoke induced emphysema by modulating barrier and immune properties of the epithelium. Tissue Barriers. 2013 Oct 1;1(4):e25248. PMID: 24665410

9. Aggarwal NR, Tsushima K, Eto Y, Tripathi A, Mandke P, Mock JR, **Garibaldi BT**, Singer BD, Sidhaye VK, Horton MR, King LS, D'Alessio FR. Immunological Priming Accelerates Resolution of Lung Inflammation by Macrophage-derived IL-10. J Immunol. 2014 May 1;192(9):4453-64. PMID: 24688024
10. Mock JR, **Garibaldi BT**, Aggarwal NR, Jenkins J, Limjunyawong N, Singer BD, Chau E, Rabold R, Files DC, Sidhaye V, Mitzner W, Wagner EM, King LS, D'Alessio FR. Foxp3$_+$ regulatory T cells promote lung epithelial proliferation. Mucosal Immunol. 2014 May 21 [Epub ahead of print]. PMID: 24850425
11. Singer, BD, Mock JR, Aggarwal NR, **Garibaldi BT**, Sidhaye VK, Florez MA, Chau E, Gibbs KW, Mandke P, Tripathi A, Yegnasubramanian S, King LS, D'Alessio DR. Regulatory T Cell DNA Methyltransferase Inhibition Accelerates Resolution of Lung Inflammation. Am J Respir Cell Mol Biol. 2014 Oct 8. [Epub ahead of print] PMID: 25295995
12. Files DC, Liu C, Pereyra A, Wang ZM, Aggarwal NR, D'Alessio FR, **Garibaldi BT**, Mock JR, Singer BD, Feng X, Yammani RR, Zhang T, Lee AL, Philpott S, Lussier S, Purcell L, Chou J, Seeds M, King LS, Morris PE, Delbono O. Therapeutic exercise attenuates neutrophilic lung injury and skeletal muscle wasting. Sci Transl Med. 2015 Mar 11;7(278). PMID: 25761888

**Extramural Funding**

**Current Support**

07/01/2015-06/30/2020

Ebola and Other Special Pathogen Treatment Center
Assistant Secretary of Preparedness and Response
Department of Health and Human Services
Total Direct Cost: $3,087,499
Co-Principal Investigator: Brian T. Garibaldi, MD

The goal of this proposal is to continue to enhance the capabilities of the Johns Hopkins Hospital as the Ebola and Other Special Pathogen Treatment Center for Region 3 of the United States. This is a joint grant awarded to the Maryland State Department of Health and Mental Hygiene and the Johns Hopkins Hospital. The grant will fund some of the capital equipment and renovations and that were necessary to create the new Johns Hopkins Biocontainment Unit and will also fund ongoing training and preparedness activities.

07/01/2015-06/30/2020

State of Maryland, Ebola Treatment Center Award
Assistant Secretary of Preparedness and Response
Department of Health and Human Services
Total Direct Cost: $1,000,000
Co-Principal Investigator: Brian T. Garibaldi, MD

This proposal is designed to develop the capabilities of the Johns Hopkins Hospital to serve as an assessment and treatment hospital for Ebola and other special pathogens in the state of Maryland. This award complements the larger ASPR award to build capabilities as one of 10 new National Ebola and Special Pathogens Treatment Centers.

**Prior Research Support**

07/01/2011 - 06/30/2013

Regulatory Tcells and Fibrocytes as Determinants of Fibroproliferation in Humans with ALI
NIH Loan Repayment Program

National Institute of Health
Total Direct Cost: $47,996.83
Principal Investigator: Brian T. Garibaldi, MD

The goal of this proposal is to develop an understanding of the role of fibrocytes in the fibroproliferative response to lung injury. We will seek to extend our observations on the role of fibrocytes in a murine model of lung injury to human patients with ALI to provide proof of principle that fibrocytes are important in fibroproliferation in humans. Data from this pilot study will inform the design of future proposals on fibroproliferation in human ALI.

9/1/2010-8/31/2012

Regulatory Tcells and the Fibroproliferative Response to Acute Lung Injury
F32HL104908
National Institute of Health
Total Direct Cost: $188,648
Principal Investigator: Brian T. Garibaldi, MD
Percent Effort: 80%

The goal of this proposal is to understand the role of Regulatory Tcells (Tregs) in the fibroproliferative response to ALI. Lymphocyte deficient, *Rag-1*$^{-/-}$ mice develop persistent injury and fibrosis after LPS-induced lung injury. Adoptive transfer of Tregs into *Rag-1*$^{-/-}$ mice restores normal resolution of lung injury and reduces fibroproliferation. We will explore the cellular mechanisms that underlie this Treg-dependent resolution of fibroproliferation.

7/2007-6/2008; 7/2009-8/2010

Multidisciplinary Training Program in Lung Disease
T32HL07534
National Institute of Health
PI: Robert Wise, MD Role: Post-Doctoral Fellow
Total Direct Costs: $1,015,387
The goal of this proposal is to train independent clinician-scientists who will pursue career paths in academic medicine.
Received 100% stipend support on this training grant

**EDUCATIONAL ACTIVITIES**

**Educational Publications**

1. **Garibaldi B**, Dunbar K. An ominous finding. Am J Med. 2006 Mar;119(3):238-40. PMID:16490467
2. **Garibaldi B**, Zaas D. An unusual case of cardiac amyloidosis. J Gen Intern Med. 2007 Jul;22(7):1047-52. PMID: 17447098
3. **Garibaldi B**, Schulman S. Tropical rhythm. Am J Med. 2007 Jul;120(7):584-5. PMID: 17602928
4. **Garibaldi B**, King KE, Jaffe JM, Moliterno AR. Hypersplenism induced by splenic vein ligation. Am J Hematol. 2008 Mar;83(3):242-4. PMID: 17874452
5. **Garibaldi BT**, Cameron SJ, Choi M. Pseudohyponatremia in a patient with HIV and hepatitis C coinfection. J Gen Intern Med. 2008 Feb;23(2):202-5. PMID: 17994269
6. Cho E, **Garibaldi B**, Hager D. A 41-year old woman with AIDS and recurrent Pneumonia. Chest. 2010 Jan;137(1):224-7. PMID: 20051409
7. Larocca CA, McEvoy JW, Ellis CL, Junkins-Hopkins J, Kolb T, Baer AN, **Garibaldi BT**. Schnitzler's syndrome associated with pancreatitis: a disease of IL-1 dysregulation. Clin Rheumatol. 2012 Jan;31(1):169-74. PMID: 21710158.

8. **Garibaldi B**., Illei P, Danoff S. Bronchiolitis. Immunology and Allergy Clinics of North America. 2012 Nov; 32(4):601-619. PMID: 23102068
9. Paulin LM, West NE, Akulian JA, **Garibaldi BT.** Endobronchial Tuberculosis with Anthracofibrosis. Am J Respir Crit Care Med. 2014 Jul 15;190(2):226. PMID: 25025354
10. **Garibaldi BT**, West NE, Illei PB, Terry PB. Bronchiolitis Obilterans Organizing Pneumonia Following a Jalapeño Grease Fire. Chest. 2015;147(2):e31-e33. PMID: 25644912
11. **Garibaldi BT** and Danoff SD. Symptom-based management of the Idiopathic Interstitial Pneumonias. Respirology 2015, Oct 9, epub ahead of print. PMID: 26450007

**Selected Abstracts**

1. **Garibaldi, B**. Pancreatico-Broncho-Cutaneous Fistula from Necrotizing Pancreatitis. Presented at Chest, 2008 (Awardee, Best case report in Interventional Bronchology).
2. Yousuf O, **Garibaldi B** and Sisson S. Evans Syndrome in an Adult: Diagnosis and Treatment. J Gen Intern Med. 2009 Apr; 24 (Supplement 1): S358-359.
3. Lake M, **Garibaldi B** and Sisson S. Tachycardia Induced Cardiomyopathy. J Gen Intern Med. 2009 Apr; 24 (Supplement 1): S358-359.
4. Quan S, Danoff S and **Garibaldi B.** Spontaneous Pneumomediastinum in the Setting of Inflammatory Myositis and Interstitial Lung Disease. Presented at Chest, 2009.
5. **Garibaldi B,** D'Alessio F, Files DC, Chau E, Sidhaye R, Fraig M, King LS. Regulatory T-lymphocytes Play a Key Role in the Fibroproliferative Response to Acute Lung Injury. Presented at ATS, 2010 (speaker).
6. **Garibaldi B,** D'Alessio F, Files DC, Mock J, Chau E, Sidhaye R, King LS. Depletion of Regulatory T cells leads to increased fibroproliferation after LPS injury through a CXCL12 dependent pathway. Presented at ATS, 2011 (Travel Award Recipient).
7. **Garibaldi B,** D'Alessio F,Mock J, Files DC , Chau E, Aggarwal N, Sidhaye R, King LS. Regulatory Tcells reduce fibroproliferation after LPS injury by decreasing fibrocyte recruitment to the alveolar space. Presented at the Respiratory Disease Young Investigators' Forum, 2011 (Awardee, Best basic science presentation).
8. **Garibaldi B,** D'Alessio F, Files DC, Mock J, Avalos C, Chau E, Eto Y, Aggarwal N, Sidhaye R, King LS. Regulatory Tcells reduce fibroproliferation after LPS-induced lung injury by decreasing fibrocyte recruitment through A CXCL12-dependent mechanism. Presented at ATS 2012 (Travel Award Recipient).
9. **Garibaldi B,** D'Alessio F, Files DC, Mock J, Avalos C, Chau E, Eto Y, Aggarwal N, Sidhaye R, King LS. Regulatory Tcells Reduce Fibroproliferation after LPS-induced Lung Injury by Decreasing Fibrocyte Recruitment Through A CXCL12 Dependent Mechanism. Presented at the Johns Hopkins Department of Medicine Research Retreat 2012 (W. Leigh Thompson Excellence in Research Award Recipient).
10. **Garibaldi B,** D'Alessio F, Files DC, Mock J, Avalos C, Chau E, Eto Y, Aggarwal N, Sidhaye R, King LS. Regulatory Tcells Decrease Acute Lung Injury Fibroproliferation By Reducing Fibrocyte Recruitment along the CXCL12-CXCR4 Axis. Presented at the Pittsburgh International Lung Conference 2012 (Travel Award and Judges' Award Recipient)
11. **Garibaldi B,** Aggarwal N, Sidhaye R, D'Alessio F, Mock J, Singer B, Mandke P, Chau E, Neptune E, King LS. Fibrocyte Recruitment Along the CXCL12-CXCR4 Axis Plays an Important Role in Smoke-induced Emphysema. Presented at ATS 2013.
12. Silhan L and **Garibaldi B.** Multi-Organ Fibrosis: When pulmonary fibrosis is not a single-organ disease. Presented at ATS 2104
13. **Garibaldi B**, Feller-Kopman D, Molena D, Askin F, Silhan L. Focal Organizing Pneumonia Caused By Crack Cocaine Inhalation. Presented at ATS 2014
14. **Garibaldi B,** Mandke P, Mock J, D'Alessio F, Singer B, Aggarwal N, Sidhaye R, King LS. Treg depletion leads to increased fibrocyte recruitment after bleomycin-induced lung injury. Presented at ATS 2014
15. **Garibaldi B,** Ernst N, Langlotz R, Gimburg A, Iati M, Bova G, Trexler P, Clarke W, Biddison ELD, Gwon HS, Sauer L, Garrett MR, Gragnolati BA, Brower RG, Miller RG, Perl TM, Kelen GD, Maragakis LL. Establishing a New Biocontainment and Treatment Unit. Presented at the Department of Medicine Research Retreat, Johns Hopkins, Baltimore MD 2015

16. **Garibaldi B,** Reimers M, Ernst N, Langlotz R, Gimburg A, Iati M, Bova G, Trexler P, Clarke W, Biddison ELD, Gwon HS, Sauer L, Garrett MR, Gragnolati BA, Brower RG, Miller RG, Perl TM, Kelen GD, Maragakis LL. Creating a New Biocontainment and Treatment Unit: The Johns Hopkins Experience. Presented at CHEST 2015
17. Scott A, Reimers M, Ernst N, Maragakis LL, Langlotz R, **Garibaldi BT**. Self-Selector Attitudes in the Johns Hopkins Biocontainment Unit. Presented at the Johns Hopkins Bayview Research Symposium, Baltimore MD 2015.

**Books and Book Chapters**

1. **Garibaldi B**, ed. Patient Encounters: The Internal Medicine Workup. Philadelphia: Lippincott Williams & Wilkins, 2009.
2. **Garibaldi B** and Feller-Kopman D. Use of Ultrasound for Central Venous Access. In Bolliger CT, et al, eds. Clinical Chest Ultrasound: From the ICU to the Bronchoscopy Suite. Karger: Basel, Switzerland, 2009.
3. **Garibaldi B**. Atrial Fibrillation and Atrial Flutter. In Garibaldi B, ed. Patient Encounters: The Internal Medicine Workup. Philadelphia: Lippincott Williams & Wilkins, 2009.
4. **Garibaldi B**. Approach to the Pulmonary Evaluation. In Garibaldi B, ed. Patient Encounters: The Internal Medicine Workup. Philadelphia: Lippincott Williams & Wilkins, 2009.
5. **Garibaldi B**. Pneumonia. In Garibaldi B, ed. Patient Encounters: The Internal Medicine Workup. Philadelphia: Lippincott Williams & Wilkins, 2009.
6. **Garibaldi B**. Approach to the Gastrointestinal Evaluation. In Garibaldi B, ed. Patient Encounters: The Internal Medicine Workup. Philadelphia: Lippincott Williams & Wilkins, 2009.
7. **Garibaldi B**. Hyponatremia. In Garibaldi B, ed. Patient Encounters: The Internal Medicine Workup. Philadelphia: Lippincott Williams & Wilkins, 2009.
8. **Garibaldi B**. Hyperkalemia. In Garibaldi B, ed. Patient Encounters: The Internal Medicine Workup. Philadelphia: Lippincott Williams & Wilkins, 2009.
9. **Garibaldi BT and Danoff SD.** Interstitial Lung Diseases/Diffuse Parenchymal Lung Diseases. Principles and Practice of Hospital Medicine 2015, in press.
10. **Garibaldi B**, ed. Pulmonary and Critical Care Section. The Johns Hopkins Internal Medicine Board Review: Certification and Recertification: Expert Consult, 5th edition. Philadelphia: Elsevier, 2015.

**Teaching**

**Classroom Instruction**

| | |
|---|---|
| 7/2009-6/2013 | TRIPLE (Transition to Residency and Internship and Preparation for Life) – Capstone course for 4th year medical students |
| 7/2009-6/2013 | 3rd year Basic Clerkship Lecture Series – Pulmonary Function Testing |
| 5/2011-6/2013 | 'Applying Clinical Reasoning to the Physical Exam' – 2hr seminar for 2nd year students beginning on the wards (part of the Internal Medicine Precede Course) |
| 8/2011-6/2013 | Pulmonary Genes to Society – Small group instructor in the pulmonary curriculum for 2nd year medical students |
| 7/2013-7/2014 | Director, Genes to Society Course, Perdana University Graduate School of Medicine – Director of 2 year GTS curriculum at a Hopkins affiliated medical school in Malaysia |
| 7/2009-6/2013; 2014-present | Transition to the Wards, Clinical Skills Course for 2nd year medical students |

2014-present Associate Director, TRIPLE (Transition to Residency and Internship and Preparation for Life) – Capstone course for 4th year medical students

2014-present Director, Pulmonary Course for Physiology Graduate Students – Course director of basic pulmonary physiology course for graduate students in the Department of Physiology

2015- present Director, TRIPLE (Transition to Residency and Internship and Preparation for Life) – Capstone course for 4th year medical students

**Clinical Instruction**

2004-present Teaching medical students and housestaff while performing inpatient and consultative duties at the Johns Hopkins Hospital

2008-2009 Facilitator, Resident Report

2012-2013 Site Director, Johns Hopkins University School of Medicine Basic Medicine Clerkship – conducted weekly bedside teaching sessions and clinical didactics with 3rd year basic medicine clerks

2012-present Lecturer, Carol Johns Service (Inpatient Pulmonary Service) – Lecture monthly about Interstitial Lung Disease to housestaff and fellows as part of the core curriculum on the pulmonary service.

2013-2014 Assistant Director, Clinical Clerkships, Perdana University Graduate School of Medicine – Oversaw the development and administration of the clinical clerkship program at PUGSOM, including clerkships in Medicine, Neurology, Psychiatry, Obstetrics and Gynecology, Pediatrics and Surgery.

2014-present Director, Radiology Conference, Division of Pulmonary and Critical Care Medicine – Lead weekly multi-disciplinary radiology conference for the Pulmonary Division

2014-present Longcope Firm Faculty member – Conduct bedside teaching sessions for medical students and residents

2015-present Education Director, General Medicine Service (GMS) – Coordinate educational activities for housestaff on the newly created GMS at the Johns Hopkins Hospital

2015-present Assistant Program Director for Curriculum, Osler Medical Residency Program – Coordinate educational activities for the internal medicine residency program, including clinical and bedside didactics

**CME instruction**

2008-2009 Medicine Grand Rounds – Images of Osler

2009 The Philip A. Tumulty Topics in Clinical Medicine Course
"Osler's Greatest Hits – Spontaneous Pneumomediastinum in a patient with ILD"

2011 Johns Hopkins Interventional Pulmonology Pleural Disease Course - Instructor

2012 Harbor Hospital Medical Grand Rounds - "An uncommon presentation of an uncommon disease"

2013-2014 Hospital Kuala Lumpur, Department of Medicine CME lecture series – helped organized visiting speakers from Johns Hopkins and delivered one Grand Rounds session

2015 ILD and Alphabet Soup: Recognition, Evaluation and Treatment Strategies

Johns Hopkins Update in Pulmonary, Critical Care and Sleep Medicine, South Carolina

2015 Clinical ILD Cases and Discussion
Johns Hopkins Update in Pulmonary, Critical Care and Sleep Medicine, South Carolina

2015 Setting up a Biocontainment Unit: The Johns Hopkins University Experience
Johns Hopkins Update in Pulmonary, Critical Care and Sleep Medicine, South Carolina

2015 Beyond Ebola: Emerging Threats in Infectious Disease and Biocontainment
Johns Hopkins Update in Pulmonary, Critical Care and Sleep Medicine, South Carolina

2015 Hands-on Personal Protective Equipment
Johns Hopkins Update in Pulmonary, Critical Care and Sleep Medicine, South Carolina

2015 Radiology Case Review
Johns Hopkins Update in Pulmonary, Critical Care and Sleep Medicine, South Carolina

2015 Challenging Cases and Diagnostic Dilemmas
Johns Hopkins Update in Pulmonary, Critical Care and Sleep Medicine, South Carolina

2015 Medical Jeopardy! A Course Review
Johns Hopkins Update in Pulmonary, Critical Care and Sleep Medicine, South Carolina

2015 Teaching Tips for Workplace-based Settings: Making the Most of Teaching Opportunities.
Institute for Excellence in Education, Johns Hopkins University, Baltimore, MD

**Educational Program Building / Leadership**

7/2008-6/2009 Medicine Housestaff Noon Conference Lecture Series - Organized speaker schedule and curriculum for housestaff noon conference lecture series during chief residency year

7/2011-12/2011 Johns Hopkins Faculty Development Program in Teaching Skills – Attended weekly seminars and lectures designed to improve my skills as a clinician educator

7/2012-6/2013 Site Director, Johns Hopkins University School of Medicine Basic Medicine Clerkship

2013, 2015 Planning Committee – Update in Pulmonary, Critical Care and Sleep Medicine, Johns Hopkins University School of Medicine

7/2013-7/2014 Director, Genes to Society Course, Perdana University Graduate School of Medicine

7/2013-7/2014 Assistant Director, Clinical Clerkship Program, Perdana University Graduate School of Medicine

9/2013 Organizer, International Center of Excellence (ICOE) Respiratory Update Conference, Yangon, Myanmar

9/2014-present Co-Director of Longitudinal Training, HCL Avitas/JHI – Develop and deliver longitudinal training course for general practitioners at HCL Avitas in India as part of ongoing collaboration with Johns Hopkins International

10/2014-8/2015 Associate Director, TRIPLE (Transition to Residency and Internship and Preparation for Life) – Capstone course for 4th year medical students to prepare them for internship.

| | |
|---|---|
| 10/2014- present | Associate Medical Director, Osler 8 Biocontainment Unit - Established initial and longitudinal training of care providers in highly infectious disease isolation and containment protocols. Help design clinical guidelines and staffing models for the unit. Assist with structural design of the clinical space. Organize and run regular meetings for the clinical and advisory teams. Serve as liaison with Department of Medicine and hospital leadership. Help direct research agenda and identify grant funding opportunities |
| 11/2014-present | Director, Pulmonary Course for Physiology Graduate Students – Course director of basic pulmonary physiology course for graduate students in the Department of Physiology |
| 4/2015-present | Education Director, General Medicine Service (GMS) - Coordinate educational activities for housestaff on the newly created GMS at the Johns Hopkins Hospital |
| 7/2015-present | Assistant Program Director for Curriculum, Johns Hopkins Osler Medical Residency Program – Assist with organization and delivery of educational activities for housestaff |
| 9/2015-present | Director, TRIPLE (Transition to Residency and Internship and Preparation for Life) – Capstone course for 4th year medical students to prepare them for internship. |
| 12/2015-present | Oakstone Critical Care Reviews – Lead Editor for Chest section – Organize and edit monthly audio reviews for practicing pulmonologists. |

**CME Courses taken**

9/2011-12/2011 Teaching Skills Faculty Development Course
4/2013 Introduction to Curriculum Development

**Additional Coursework**

9/2014-present Master in Education for the Health Professional, Johns Hopkins School of Education – Enrolled in masters-level program to obtain formal training in educational leadership and program development

**CLINICAL ACTIVITIES**

7/2012-present Interstitial Lung Disease Group – Faculty Member
7/2012-present Medical Intensive Care Unit (MICU) – Faculty Member
9/2014-present Longcope Firm Faculty – Attend on the Osler Medicine Housestaff Service
10/2014-present Osler 8 Biocontainment Unit – Associate Medical Director and Physician Provider

**Certification**
2007-present Maryland State Medical License, D0066256
2007-2017 Board Certified, Internal Medicine
2012-2022 Board Certified, Pulmonary Medicine
2013-2023 Board Certified, Critical Care Medicine
2002-present Basic Life Support
2004-present Advanced Cardiac Life Support

**SYSTEM INNOVATION AND QUALITY IMPROVEMENT ACTIVITIES**

**None**

**ORGANIZATIONAL ACTIVITIES**

**Institutional Administrative Appointments**

| | |
|---|---|
| 2008-2009 | Assistant Chief of Service, The Longcope Firm<br>Johns Hopkins University School of Medicine<br>The Johns Hopkins Hospital |
| 2009 | Internal Medicine Selection Committee Member<br>Johns Hopkins University School of Medicine<br>The Johns Hopkins Hospital |
| 2008-2009 | Collaborative Practice Committee Member<br>Department of Medicine<br>The Johns Hopkins Hospital |
| 2010-2013 | Pulmonary Division Curriculum Committee Member<br>Division of Pulmonary and Critical Care<br>The Johns Hopkins Hospital |
| 2012-2013 | Site Director, Basic Medicine Clerkship<br>Department of Medicine<br>The Johns Hopkins Hospital |
| 2012-2013 | Education Committee Member<br>Department of Medicine<br>The Johns Hopkins Hospital |
| 2013-present | Intern-selection committee member for the Osler Internal Medicine Residency Program |
| 2014 | Admissions Committee Member, Perdana University Graduate School of Medicine |
| 2014 | Information, Computing and Telecommunications (ICT) Committee member<br>Perdana University Graduate School of Medicine |
| 2014-present | Clinical Competency Committee – Division of Pulmonary and Critical Care |
| 2014-present | Clinical Competency Committee – Osler Medical Residency Program |
| 2014-2015 | Co-Chair – Genes to Society Working Group on Pedagogy |
| 2014-present | Chair – Department of Medicine Office of Education Clinical Skills Working Group |
| 2014-present | Associate Medical Director – Osler 8 Biocontainment and Treatment Unit |
| 2015-present | Assistant Program Director for Curriculum, Osler Medical Residency program |
| 2015-present | Member, Ombuds Office, Johns Hopkins University School of Medicine |

**Editorial Activities**

| | |
|---|---|
| 2007-present | Reviewer, Journal of General Internal Medicine |
| 2010-present | Reviewer, Practical Reviews in Critical Care |
| 2010-present | Reviewer, Journal of Hospital Medicine |
| 2012-present | Reviewer, American Journal of Physiology, Lung Cellular and Molecular Physiology |
| 2013-present | Reviewer, Journal of Bronchology and Interventional Pulmonology |
| 2013-present | Reviewer, Journal of Critical Care |

2013-present Reviewer, PLOS ONE
2014-present Reviewer, Journal of Infection
2014-present Reviewer, American Journal of Medicine
2014-present Reviewer. Transplant Infectious Disease
2015-present Reviewer, Annals of the American Thoracic Society
2015-present Reviewer, Health Security

**Professional Societies**

2004-2010 American Medical Association

2007-present American Thoracic Society

2007-present American College of Chest Physicians

2007-2010 Society of Critical Care Medicine

2011-2013 American Heart Association

**RECOGNITION**

**Awards, Honors**

1995 Thomas Hunter Memorial Award, Hunter College High School, New York, NY

1995 Valedictorian, Hunter College High School, New York, NY

1999 *Phi Beta Kappa*, Harvard College, Cambridge, MA

1999 Summa cum laude, Harvard College, Cambridge, MA

1999 John Finley Traveling Fellowship, Harvard College, Cambridge, MA

2004 Longcope Award for outstanding student in internal medicine, Johns Hopkins University School of Medicine, Baltimore, MD

2004 *Alpha Omega Alpha*, Johns Hopkins University School of Medicine, Baltimore, MD

2007 Daniel Baker Award for resident most exemplifying the ideals of the Osler Medical Service, Johns Hopkins University School of Medicine, Baltimore, MD

2009 Interventional Bronchology Case Report Award, CHEST, Philadelphia, PA

2010 Ruth L. Kirschstein National Research Service Award (NRSA)

2011 American Thoracic Society Travel Award, Denver, CO

2011 NIH Loan Repayment Award

2011 Respiratory Disease Young Investigators' Forum Grant for best basic science presentation, Atlanta, GA

2012 American Thoracic Society Travel Award, San Francisco, CA

2012 W. Leigh Thompson Excellence in Research Award, Johns Hopkins University Department of Medicine Research Retreat 2012

2012 Pittsburgh International Lung Conference Travel Award and Judges Award, Pittsburgh, PA

2015 Maryland Hospital Association Distinguished Service Award, accepted on behalf of the Ebola Preparedness Team at the Johns Hopkins Hospital

**Invited Talks, Panels**

2007 "Thrombocytopenia in the ICU"

Pulmonary Grand Rounds
The Johns Hopkins Hospital

2007 "Propofol Infusion Syndrome"
Pulmonary Grand Rounds
The Johns Hopkins Hospital

2008 "Thyroid Storm"
Pulmonary Grand Rounds
The Johns Hopkins Hospital

2008 "Pulmonary Mucormycosis in Immunocompromised Patients"
Pulmonary Grand Rounds
The Johns Hopkins Hospital

2008 Medicine Grand Rounds – "Images of Osler" – presented monthly
The Johns Hopkins Hospital

2009 Medicine Grand Rounds – "Images of Osler" – presented monthly
The Johns Hopkins Hospital

2009 "The role of regulatory Tcells in Acute Lung Injury Fibroproliferation
Research in Progress
Division of Pulmonary and Critical Care
The Johns Hopkins Hospital

2010 "The role of fibrocytes in Acute Lung Injury Fibroproliferation"
Research in Progress
Division of Pulmonary and Critical Care
The Johns Hopkins Hospital

2010 "Regulatory T-lymphocytes play a key role in the fibroproliferative response to Acute Lung Injury."
American Thoracic Society International Conference
New Orleans, Louisiana

2011 "Tregs decrease fibrocyte recruitment to the lung by altering CXCL12 signaling"
Research in Progress
Division of Pulmonary and Critical Care
The Johns Hopkins Hospital

2011 The role of Tregs in lung injury repair
Pulmonary Division Research Conference
Wake Forest University
Winston-Salem, North Carolina

2011 "Regulatory Tcells reduce fibroproliferation after LPS injury by decreasing fibrocyte recruitment to the alveolar space."
Respiratory Disease Young Investigator's Forum
Pittsburgh, Pennsylvania

2012 Fibrocytes and Acute Lung Injury Fibroproliferation
Pulmonary and Immunology Research Conference
Duke University
Durham, North Carolina

2012 "Clinical Reasoning Applied to the Physical Exam
Student National Medical Association
Johns Hopkins Hospital
Baltimore, Maryland

2012 "An uncommon presentation of an uncommon disease"
Medicine Grand Rounds
Harbor Hospital

Baltimore, Maryland

2012 "Granulomatous BOOP"
Pulmonary Grand Rounds
The Johns Hopkins Hospital
Baltimore, Maryland

2013 "The Role of Tregs in Lung Injury Fibroproliferation"
Department of Medicine, Pulmonary Division Review
The Johns Hopkins Hospital
Baltimore, Maryland

2013 "Interstitial Lung Disease: State of the Art"
International Center of Excellence at Yangon University
Yangon, Myanmar

2013 "Interventional Pulmonology: An Update for the Practicing Pulmonologist"
International Center of Excellence at Yangon University
Yangon, Myanmar

2013 "Pleural Disease in the 21st Century"
International Center of Excellence at Yangon University
Yangon, Myanmar

2014 "New Treatments for Obliterative Bronchiolitis"
American Thoracic Society International Conference
San Diego, California

2014 "Obliterative Bronchiolitis – Where do we stand in 2014?"
American Thoracic Society International Conference – Session Co-Chair
San Diego, California

2014 "Bronchiolitis Obliterans Organizing Pneumonia – An Interactive Case"
Department of Medicine Grand Rounds
Hospital Kuala Lumpur
Kuala Lumpur, Malaysia

2014 "Collagen Vascular Disease and the Lung"
Housestaff Noon Conference Series
The Johns Hopkins Hospital
Baltimore, MD

2014 "More common than we think?"
Pulmonary Grand Rounds
The Johns Hopkins Hospital
Baltimore, MD

2014 Clinical Reasoning – A case based approach
HCL Avitas Clinical Training Program
Delhi, India

2015 "Lessons Learned from Ebola"
National Facilities Management and Technology (NFMT) Conference
Baltimore, MD

2015 Hopkins' Response to Ebola
Global Health Institute, Panel discussion
Baltimore, MD

2015 Preparing for Ebola and the Next Potential Pandemic: Experience from Emory and Johns Hopkins
Infectious Disease: A Health Facility Perspective to a Global Crisis
Health Facility Institute 26th Annual Symposium

Atlanta, GA

2015 Creating a New Biocontainment Unit
Johns Hopkins Department of Medicine Medical Grand Rounds
Baltimore, MD

2015 How to Give Effective Feedback
HCL Avitas Faculty Development Session
Delhi, India

2015 Working With Teams: Principles of Emotional Intelligence, Group Dynamics and Communication
HCL Avitas Faculty Development Session
Delhi, India

2015 How to Give Effective Feedback
Chinese Hospital Delegation and Johns Hopkins Medicine International
Baltimore, MD

2015 Bronchoscopy in Special Populations – Lung Transplant, CF and ICU patients
9th Annual Johns Hopkins Pulmonary Fellowship Introduction to Bronchoscopy Course
Baltimore, MD

2015 Creating a Bedside Medicine Culture
Stanford 25 Bedside Medicine Symposium
Palo Alto, CA

2015 Global Case Reports in Obstructive Lung Disease
Moderator for poster session at CHEST 2015
Montreal, Canada